UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
HAYDEN GUY,                                          **ORDER**

               Plaintiff,                     15-cv-2017 (LDH)(LB)

       -against-

MTA NEW YORK CITY TRANSIT,

              Defendant.
------------------------------------------------------------------x
LaSHANN DeARCY HALL, United States District Judge:

      Pro se Plaintiff Hayden Guy brings this action against Defendant, MTA New York City Transit ( "Defendant" or "MTA") alleging claims of discrimination, retaliation, and hostile work environment on the basis of race and religion under Title VII and 42 U.S.C. §§ 1981 and 1983. Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND[1]

      Plaintiff is a black male who practices the Hebrew Israelite religion. (*See* Am. Compl. 5, 8-9, ECF No. 10.)[2] During the time period relevant to this action, Plaintiff was an employee of Defendant MTA. In 2010, Plaintiff filed a lawsuit against the MTA (the "2010 Lawsuit"), in which he alleged that the MTA failed to accommodate his observance of the Sabbath and thereby discriminated against him on the basis of his religion. (Compl., *Guy v. MTA New York City Transit*, No. 10-cv-1998, ECF No. 1 (E.D.N.Y. May 3, 2010)). That case was dismissed on September 26, 2012. *See Guy v. MTA New York City Transit*, No. 10-cv-1998, 2012 WL 4472098, at *1 (E.D.N.Y. Sept. 26, 2012) (order adopting report and recommendation to grant

---

[1] The following facts are taken from the complaint and are not findings of fact by the Court. They are assumed to be true for the purpose of deciding the instant motion and are construed in a light most favorable to Plaintiff, the non-moving party.

[2] Citations to the Amended Complaint refer to the pagination created by the Court's Electronic Case Filing ("ECF") system.

Defendant's motion for summary judgment). Plaintiff now alleges that a number of other employees at the MTA, most particularly a supervisor named Lenny Akselrod, were aware of Plaintiff's discrimination lawsuit. (Am. Compl. 6.) As a result, Plaintiff contends that Akselrod had a vendetta against him. (*Id.* at 7.)

I. Plaintiff's Demotion

Plaintiff alleges, without elaboration, that he and a fellow train operator, Carlyle Osborne, were involved in an incident at work. (Am. Compl. 7.) Nonetheless, Plaintiff alleges that as a result of this incident, he underwent a demotion, after which he was suspended without pay. (*Id.* at 6-7.) Plaintiff subsequently filed for unemployment benefits. (*Id.* at 6.) Due to an error by the MTA, however, Plaintiff's unemployment benefits were terminated, and Plaintiff went eight months without receiving any pay. (*Id.*) Osborne was not punished and returned to work immediately following the incident. (*Id.* at 7.) Plaintiff was informed by his union that Osborne was not punished because of his seniority, having worked for the MTA for twenty years, whereas Plaintiff had only worked for the MTA for six years. (*Id.*)

Plaintiff contends that Akselrod was instrumental in bringing about his demotion. (*Id*. at 6.) During Plaintiff's demotion process, Plaintiff noticed that all of the train operators, conductors, and cleaners going through the same process were black. (*Id*. at 7.) Plaintiff states that "Lenny Akselrod seemed to be enjoying himself firing and demoting black employees," and notes that Akselrod laughed at Plaintiff when he was demoted. (*Id.*)

Plaintiff sought assistance from the director of his union, Chris Lightbourne. (*Id.* at 4-5.) On November 18, 2013, Lightbourne spoke with the MTA's human resources department ("HR") on Plaintiff's behalf. (*Id.* at 6.) Lightbourne informed HR that Plaintiff was going to hire a lawyer and sue the MTA. (*Id.*) The HR personnel replied that they "[didn't] care"

because their actions were "coming from higher-up" and "there [was] no way Mr. Guy [would be] promoted." (*Id.*) Subsequently, Lightbourne and union representative Daniel Ascora encouraged Plaintiff to seek legal counsel. (*Id.*) On November 25, 2013, Plaintiff filed a complaint against Akselrod. (*Id.* at 5-6; Zinonos Decl. Ex. H, at 58-59, ECF No. 22-1.[3]) Five days after Plaintiff filed that complaint, Akselrod re-hired him. (*Id.* at 6.)

II. The 2014 Promotion Denial

In June 2014, Plaintiff took a practical exam seeking qualification for the position of structure maintainer. (*Id.* at 4, 8.) Plaintiff passed the exam, but weeks went by before he received any response regarding his desired promotion. (*Id.* at 8.) As such, Plaintiff once again sought assistance from Lightbourne, who contacted HR on Plaintiff's behalf. (*Id.*) Lightbourne later informed Plaintiff that, although he had passed the practical exam, HR called between fifteen and twenty other candidates ahead of Plaintiff and deliberately passed him over for promotion. (*Id.*) When Lightbourne complained to HR, HR assured Lightbourne that they would contact Plaintiff. (*Id.*)

Two weeks later, Plaintiff received a letter from HR directing him to come in on July 25, 2014, to take a urine test, provide any driving and criminal records, and pay outstanding tickets so that he could be promoted. (*Id.*) Plaintiff complied with the letter's instructions and submitted to the urine test and supplied the requested application materials. (*See id.*) On August 6, 2014, the MTA notified Plaintiff that he would not be promoted to the structure maintainer position. (*Id.* at 4.) On August 13, 2014, Plaintiff wrote to HR regarding the denied promotion. (*Id.*) HR responded in writing on August 18, 2014, refusing to disclose the reason why Plaintiff was not promoted. (*Id.*)

---

[3] Citations to exhibits to the Zinonos Declaration refer to the pagination created by the Court's Electronic Case Filing ("ECF") system.

Plaintiff contacted Lightbourne, who informed Plaintiff that management had told him that Plaintiff would not be promoted, and that the decision not to promote Plaintiff was coming from "higher up." (*Id.* at 4-5.) On another occasion, Lightbourne told Plaintiff that Plaintiff had been "blacklisted" by the MTA because of the 2010 lawsuit. (*Id.* at 5.) Lightbourne further told Plaintiff that the denial of the promotion was a clear case of retaliation and discrimination, and that there were numerous other cases of similar misconduct by the MTA. (*Id.*) All of the cases Lightbourne had seen involving employees not being promoted, being fired, or not being paid workers' compensation involved only the black employees. (*Id.*) Lightbourne also told Plaintiff that MTA's knowledge of Plaintiff's religious beliefs was not "helping the situation." (*Id.*) Plaintiff asked Lightbourne to make a written statement on his behalf, but Lightbourne declined to do so. (*Id.*)

Plaintiff also went to the New York City Department of Citywide Administrative Services ("DCAS") to request a letter of certification as to why he was not promoted. (*Id.* at 7.) Although Plaintiff had passed the June 2014 exam, DCAS's computer records showed that Plaintiff was "not qualified for the practical exam." (*Id.* at 7-8.) Plaintiff concluded that someone went into his records and falsified his personal information. (*Id.* at 7.)

Plaintiff states that the MTA appears to have a systematic practice of denying promotions to, firing, and demoting black employees, particularly those of the Hebrew Israelite religion. (*Id.* at 8-9.) Plaintiff alleges that Akselrod is the "higher-up" acting against him and states that Akselrod has a reputation of being vindictive, cruel, and petty. (*Id.* at 7.)

III. Procedural History

On November 25, 2013, Plaintiff filed a complaint against the MTA with the New York State Division of Human Rights ("NYSDHR") alleging retaliation based on his suspension and

4

demotion. (Zinonos Decl. Ex. H, at 58-59.) The NYSDHR dual-filed the complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 55.) The NYSDHR found that there was no probable cause to find that the MTA had engaged in the unlawful discriminatory conduct that Plaintiff alleged. (*Id.* Ex. I, at 69.) The EEOC adopted the findings of the NYSDHR and issued a Dismissal and Notice of Rights (the "right-to-sue letter") on June 25, 2014, advising Plaintiff of his right to file a lawsuit within ninety days of receipt. (*Id.* Ex. J at 72.) On December 23, 2014, Plaintiff filed another complaint with the EEOC regarding the MTA's failure to promote him. (*Id.* Ex. K, at 79.) The EEOC dismissed Plaintiff's failure to promote claim and issued a right-to-sue letter on January 14, 2015. (*Id.* Ex. M.) Plaintiff filed a complaint in the instant action on April 10, 2015. (Compl., ECF No. 1.) Plaintiff subsequently filed his first amended complaint on July 21, 2015. (Am. Compl.)

The Court reads the Amended Complaint to allege the following claims: (1) employment discrimination on the basis of race and religion premised on his demotion and denial of a promotion; (2) retaliation based on his previous religious discrimination lawsuit; and (3) hostile work environment.[4]

## STANDARD OF REVIEW

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The

---

[4] Defendants have not moved on any hostile work environment claim. However, under the liberal reading afforded to pro se plaintiffs and out of an abundance of caution, the Court reads the Amended Complaint to include a hostile work environment claim.

5

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). A court considering a Rule 12(b)(6) motion must take the factual allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. *Id.*

At the motion to dismiss stage, the court "must merely determine whether the complaint itself is legally sufficient." *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999) (citation omitted). It is not the court's function to weigh the evidence that might be presented at trial. *Id.* The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Id.* (quoting *Villager Pond Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 519 U.S. 808 (1996)). "Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6)." *Id.* (citing *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (citation omitted)).

Where, as here, the plaintiff is proceeding pro se, "courts are obliged to construe the plaintiff's pleadings liberally." *Giannone v. Bank of Am., N.A.*, 812 F. Supp. 2d 216, 219 (E.D.N.Y. 2011) (alterations omitted). As such, their complaints should be read to raise the strongest arguments that they suggest. *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191-92 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Id.* (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "Accordingly, the dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."

*Rios v. Third Precinct Bay Shore,* No. 08-cv-4641, 2009 WL 2601303, at *2 (E.D.N.Y. Aug. 20, 2009) (quoting *Sealed Plaintiff*, 537 F.3d at 185) (citations omitted).

## DISCUSSION

### I. Judicial Notice of Documents

Defendant asks the Court to take judicial notice of twelve exhibits, Defendant's Exhibits B through M. These exhibits fall into three categories: (1) arbitration documents (Exhibits B through D); (2) letters between Plaintiff and the MTA (Exhibits E through G); and (3) materials relating to Plaintiff's complaints to the NYSDHR and the EEOC (Exhibits H through M). For purposes of deciding the instant motion, the Court determines that it need only consider the last category of documents, Plaintiff's NYSDHR and EEOC materials.

Where an exhaustion of remedies is a prerequisite to bringing suit, as with Plaintiff's Title VII claims, this Court may take "judicial notice of the public records and reports of relevant administrative bodies" and the facts set forth therein. *Holmes v. Fresh Direct*, No. 13-cv-4657, 2015 WL 4885216, at *4 (E.D.N.Y. Aug. 5, 2015) (collecting cases). In deciding motions to dismiss employment discrimination actions under Title VII, "courts regularly take notice of EEOC and NYSDHR filings and determinations relating to plaintiff's claims." *Day v. Distinctive Personnel, Inc.*, 656 F. Supp. 2d 331, 332 n.2 (E.D.N.Y. 2009) (collecting cases). Because the records of state administrative procedures are public records, a court may take judicial notice of these records without converting a motion to dismiss to one for summary judgment. *Evans v. N.Y. Botanical Garden*, No. 02-cv-3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (taking judicial notice of NYSDHR documents, including two complaints, a Notice of Conference and Production of Records, and a Determination and Order After Investigation, without converting the motion into one for summary judgment).

7

Accordingly, this Court takes judicial notice of Defendant's Exhibits H and I (NYSDHR materials), as well as Defendant's Exhibits J, K, L, and M (EEOC materials).

**II.   Plaintiff's Claims Based on Demotion**

Defendant argues that any Title VII claim based on Plaintiff's alleged demotion is untimely. (Def.'s Mot. to Dismiss 12-13, ECF No. 23.) The Court agrees. To be timely, a complaint asserting claims under Title VII must be filed within ninety days of the claimant's receipt of a right-to-sue letter. *Froehlich v. Holiday Org., Inc.*, No. 11-cv-2977, 2012 WL 4483006, at *3 (E.D.N.Y. Sept. 27, 2012) (quoting *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir.1996) (citations omitted)). Here, Plaintiff filed a complaint with the NYSDHR on November 25, 2013. (Zinonos Decl. Ex. H, at 57.) In that complaint, Plaintiff averred that the MTA retaliated against him by suspending and then demoting him "because of an incident caused by train operator Carlyle Osborne on June 12, 2013." (*Id.* at 59.) The November 25, 2013 NYSDHR complaint was dual-filed with the EEOC. (*Id.* at 55.) On June 25, 2014, the EEOC issued a right-to-sue letter. (*Id.* Ex. J.) September 24, 2014, marked ninety days after the issuance of Plaintiff's right-to-sue letter and was therefore approximately the deadline for Plaintiff to file a federal complaint in this action based on demotion. Plaintiff filed the original complaint in this action on April 10, 2015. (Compl., ECF 1.) Accordingly, to the extent Plaintiff premises any cause of action on his demotion, such a claim is time-barred and dismissed with prejudice.[5] *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 28 (2d Cir. 2011) (affirming dismissal of discrimination claim commenced ninety-three days after receipt of EEOC right-to-sue letter as time-barred).

---

[5] Plaintiff's second EEOC complaint, dated December 23, 2014, does not cure the timeliness issue because it is premised on the denial of Plaintiff's promotion, not demotion. (*See* Zinonos Decl. Ex. K.)

**III. Plaintiff's Discrimination Claims Premised on the Denial of a Promotion**

A. Exhaustion of Administrative Remedies

Defendant argues that Plaintiff's race discrimination claims under Title VII must be dismissed for Plaintiff's failure to exhaust his administrative remedies. (Def.'s Mot. to Dismiss 14.) The Court agrees. As a condition precedent to a federal claim under Title VII, a plaintiff must show that he exhausted his administrative remedies provided by the EEOC. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (citations omitted).[6] In other words, filing a complaint with the EEOC is a precondition to bringing Title VII claims in federal court. *See id.* (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)). Plaintiff did not do so in this case.

In limited circumstances, however, claims not raised in an EEOC complaint nevertheless may be brought in federal court if they are "reasonably related" to the claim filed with the agency. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citing *Butts v. N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)); *see also Hurt v. Donahoe*, No. 07-cv-04201, 2011 WL 10526984, at *3 (E.D.N.Y. Feb. 24, 2011) ("A Title VII plaintiff typically may raise only those claims that are either contained in a prior EEOC charge or are 'reasonably related' to allegations raised therein.") (quoting *Chandler v. AMR Am. Eagle Airline*, 251 F. Supp. 2d 1173, 1178 (E.D.N.Y. 2003)), *aff'd*, 464 F. App'x 40 (2d Cir. 2012) (summary order). The Second Circuit has recognized three situations where it deems claims to be

---

[6] Unlike Plaintiff's Title VII claim for discrimination based on race, there is no requirement that a plaintiff exhaust his administrative remedies when bringing a claim under §§ 1981 or 1983. *See Patsy v. Board of Regents of State of Fla.,* 457 U.S. 496, 516 (1982) (exhaustion of state administrative remedies "should not be required as a prerequisite to bringing an action pursuant to § 1983"); *Ibrahim v. N.Y. State Dep't of Health,* 581 F. Supp. 228, 233 (E.D.N.Y. 1984) (distinguishing Title VII claims, which require exhaustion of administrative remedies, from claims under 42 U.S.C. §§ 1981 and 1983, which do not).

"reasonably related" to the claims in an EEOC complaint: "(1) claims within the scope of the EEOC investigation likely to result from the EEOC complaint; (2) claims of retaliation for filing the EEOC complaint; and (3) further incidents that occur after the filing of the EEOC charge that are carried out in precisely the same manner alleged in the EEOC charge." *Hurt*, 2011 WL 10526984, at *3 (citing *Butts*, 990 F.2d at 1402-03).

When determining whether claims are reasonably related, the focus should be "on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2004) (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002)) (citation omitted). "Although 'merely checking a box or failing to check a box does not necessarily control the scope of the charge . . . the absence of a checkmark weighs against concluding that the plaintiff has alleged discrimination on the basis of the claim designated by that box.'" *Holmes*, 2015 WL 4885216, at *4-5, 7 (dismissing with prejudice claim of gender discrimination, where plaintiff's EEOC charge was devoid of any reference to gender discrimination) (citation omitted); *cf. Williams v. N.Y.C. Hous. Auth.*, 458 F.3d at 71 (claim of sexual harassment could proceed even though plaintiff did not check box marked "sex" because claim was reasonably related to retaliation claim filed with EEOC and EEOC complaint's allegations were sufficient to put the EEOC on notice of potential sex discrimination claim).

Here, the entire basis of Plaintiff's January 8, 2015 EEOC charge is that he was passed over for a promotion in retaliation for his 2010 religious discrimination lawsuit. (*See* Am. Compl.; *see also* Def.'s Mot. to Dimiss 20; Zinonos Decl. Exs. K, at 79-80, L.) The allegations in Plaintiff's EEOC complaint are wholly unrelated to race. Moreover, Plaintiff did not check the box marked "race" on the EEOC charge. (*See* Zinonos Decl. Ex. L, at 92.) Plaintiff's

10

December 23, 2014 EEOC intake forms are similarly devoid of any reference to a discrimination claim based on race. Plaintiff checked the "retaliation" box, but not the "race" box in response to the question inquiring as to the basis for Plaintiff's claim of employment discrimination. (*Id.* Ex. K, at 76.) In addition, Plaintiff's written narrative makes no reference to discrimination on the basis of race. (*See id.*, at 79-81.) Indeed, the only reference to Plaintiff's race is in Plaintiff's EEOC intake form in the "Personal Information" section, where Plaintiff identified his race as "Black or African American." (*Id.* at 75.) *See Holmes*, 2015 WL 4885216, at *6 (finding plaintiff failed to exhaust administrative remedies with respect to sex discrimination claim where nothing in the EEOC charge mentioned *conduct* related to her sex, notwithstanding plaintiff's identification of her sex in charge). Such identification is not enough for the court to find that the charge is reasonably related. Accordingly, to the extent Plaintiff premises any of his claims on race discrimination under Title VII, such a claim is barred by Plaintiff's failure to exhaust administrative remedies and, consequently, is dismissed with prejudice.

    B. Plaintiff Fails to Plead a Discrimination Claim Based on Race or Religion

Even if Plaintiff had fully exhausted his administrative remedies concerning his discrimination claim, he nevertheless fails to meet the pleading requirements to withstand a motion to dismiss. Courts apply substantially the same pleading standard in analyzing discrimination claims under Title VII, § 1981, and § 1983. *See McDowell v. North Shore-Long Island Jewish Health Sys., Inc.*, 788 F. Supp. 2d 78, 81 (E.D.N.Y. 2011) (analyzing § 1981 claim under same standard as Title VII claim); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015) (noting that, once plaintiff pleads that deprivation was made by person acting under color state law, plaintiff must plausibly allege claim under the same standard as a

Title VII claim).[7] Under law, a prima facie case of discrimination consists of four elements: (1) a plaintiff's membership in a protected class; (2) the plaintiff's qualification for a particular position of employment; (3) an adverse employment action by the defendant employer; and (4) "some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015) (outlining prima facie case of employment discrimination). However, a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss. *Alleyne v. NAACP Legal Defense and Educ. Fund, Inc.*, No. 14-cv-6675, 2015 WL 6869731, at *2 (E.D.N.Y. Nov. 6, 2015) (collecting cases). Instead, a plaintiff need only plead facts to give plausible support to his claim. *Id.* At the pleading stage, a plaintiff alleging employment discrimination must allege that the employer took adverse action against him at least in part for a discriminatory reason. *Vega*, 801 F.3d at 87 (citing *Littlejohn*, 795 F.3d at 310). He may do so either (1) directly, by alleging facts that show an intent to discriminate, or (2) indirectly, by alleging circumstances that give rise to a plausible inference of discrimination. *Id.*

Plaintiff alleges that he was discriminated against when he was denied a promotion to the position of structure maintainer. However, Plaintiff fails to plead any facts that would show directly that the denial of a promotion was related in any way to his race or religion. Indeed, the

---

[7] When a defendant sued for discrimination under §§ 1981 or 1983 is a municipality, "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004)) (citations omitted). The Court finds that it does not need to reach the issue of whether Plaintiff identified a municipal policy or custom, however, because Plaintiff has not pleaded sufficient facts to support an inference of discrimination. Accordingly, Plaintiff cannot maintain a claim for race discrimination under §§ 1981 and 1983 or for religious discrimination under § 1983.

complaint is entirely devoid of any actions or remarks by or on behalf of Defendant that would evidence discrimination.

Plaintiff has similarly failed to allege indirect evidence of discrimination. Indirect evidence that gives rise to an inference of discrimination can arise from circumstances including, but not limited to, "the employer's criticism of the plaintiff's performance in ethnically degrading terms"; "invidious comments about others in the employee's protected group"; "the more favorable treatment of employees not in the protected group"; or "the sequence of events leading to the plaintiff's discharge." *Conforti v. Sunbelt Rentals, Inc.*, No. 15-cv-5045, 2016 WL 4288699, at *10 (E.D.N.Y. Aug. 15, 2016) (quoting *Littlejohn*, 795 F.3d at 312) (citation omitted). A plaintiff alleging that he was treated less favorably than individuals outside of his protected class must allege that he was similarly situated in all material respects to those comparators. *See Littlejohn*, 795 F.3d at 312 (comparators must be similarly situated to raise inference of discrimination) (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)); *see also Herling v. N.Y.C. Dep't of Educ.*, No. 13-cv-5287, 2014 WL 1621966, at *7 (E.D.N.Y. Apr. 23, 2014) (the method of using indirect evidence of discrimination "is allowed only if the alleged comparators are similarly situated in all material respects") (quoting *Sank v. City Univ. of N.Y.*, No. 10-cv-4975, 2011 WL 5120668, at *11 (S.D.N.Y. Oct. 28, 2011)). Here, Plaintiff alleges that white employees of the MTA, had "no problems" being promoted and that he "couldn't help [but] notice that all the train operators, conductors and cleaners" going through the demotion process "were all black." (Am. Compl. 5, 7.) Plaintiff has failed to allege, however, that these white comparators were similarly situated to Plaintiff in all other material respects. Further, Plaintiff pleads no facts that indicate that non-Hebrew Israelite employees

were treated any better than Hebrew Israelite employees. Accordingly, Plaintiff has not alleged facts that give rise to an inference of discrimination based on either race or religion.

## IV. Plaintiff's Retaliation Claims Based on the Denial of a Promotion

To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). Plaintiff has adequately pleaded a retaliation claim under Title VII.

*First*, Plaintiff filed complaints against his employer: (1) the 2010 lawsuit and (2) the November 25, 2013 NYSDHR complaint against Akselrod. (*See* Am. Compl. 5-6.) Filing a complaint is a protected activity. *Gregory v. Daly*, 243 F.3d 687, 700-01 (2d Cir. 2001) (stating that filing a lawsuit is "undoubtedly" protected activity for purposes of establishing a prima facie case of retaliation, and "the making of informal protests of discrimination, including making complaints to management," is also protected (quoting *Matima v. Celli*, 228 F.3d 68, 78 (2d Cir. 2000)). *Second*, Plaintiff alleges several times that Defendant was aware of his lawsuit. (Am. Compl. at 5-6.) In addition, Plaintiff alleges that Akselrod, a supervisor at the MTA, as well as other MTA employees, had knowledge of Plaintiff's former lawsuit. (*Id*. at 6.) These allegations are sufficient to satisfy the second prong. *Third*, Plaintiff alleges that he was not promoted although he was properly qualified. A failure to promote is an adverse employment action. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a

separate actionable 'unlawful employment practice.'"). *Fourth*, Plaintiff states that Lightbourne told him that Plaintiff "was blacklisted because of the former lawsuit, and that it was a clear case of retaliation and discrimination." (Am. Compl. 5.) This is sufficient to plead a causal connection. A plaintiff may plead a causal connection by using evidence of retaliatory animus directed towards a plaintiff by a defendant. *See, e.g., Garcia v. Coll. of Staten Island*, No. 11-cv-2252, 2012 WL 3930448, at *9 (E.D.N.Y. July 31, 2012) (retaliatory animus found where individual stated she testified against plaintiff because of "what he did" (alterations omitted)), *report and recommendation adopted,* 2012 WL 3929985 (E.D.N.Y. Sept. 10, 2012).

Accordingly, Plaintiff's claim of retaliation based on the denial of a promotion would be better tested at the summary judgment stage, and the Court denies Defendant's motion to dismiss this claim.

## V. Hostile Work Environment

A plaintiff alleging a hostile work environment claim must plead facts that tend to show that the complained-of conduct: (1) "is objectively severe or pervasive"; (2) "creates an environment that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates an environment that is discriminatorily hostile or abusive to the plaintiff because of the plaintiff[']s membership in a protected class." *Crawford v. Lutheran Med. Ctr.,* No. 08-CV-3429, 2011 WL 887806, at *5 (E.D.N.Y. Mar. 14, 2011) (citing *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007)). In assessing the allegations, the Court "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *see also Patane*, 508 F.3d at 113 (same). The incidents

15

complained of "must be sufficiently continuous and concerted" in order to be termed pervasive. *Littlejohn*, 795 F.3d at 321 (reasoning that complained-of conduct must be continuous and concerted, rather than episodic).

Plaintiff does not sufficiently allege a hostile work environment claim. Plaintiff simply identifies a series of incidents in his complaint, including Akselrod laughing at him and the allegation that someone "went into the computer data and falsified [his] information." (Am. Compl. 7.) Although Plaintiff alleges that he has suffered ridicule, humiliation, demotion, and suspension, he does not offer anything to support those claims beyond his statement that Akselrod laughed at him. Plaintiff fails to allege any facts that would show that the conduct of which he complains is objectively severe and pervasive. *See Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 136, 150 (E.D.N.Y. 2015) (pro se plaintiff's conclusory allegations that she suffered "disrespectful treatment, retaliation and harassment," which created a hostile work environment, and that defendant engaged in "hostile work environment discrimination" were insufficient to plead a hostile work environment claim). Although Plaintiff refers repeatedly to his demotion, suspension, and Defendant's failure to promote him, such actions are discrete discriminatory acts rather than repeated and pervasive conduct. *See Thomson v. Odyssey House*, No. 14-cv-3857, 2015 WL 5561209, at *10 (E.D.N.Y. Sept. 21, 2015) (plaintiff's termination was a discrete act that could not support a hostile work environment claim). In addition, there is no factual basis upon which to conclude that any of Defendant's actions were taken because of Plaintiff's race or religion. Nor does Plaintiff allege or set forth any facts that Defendant's acts or conduct affected "the conditions of [his] employment," an essential element of a hostile work environment claim. *Patane*, 508 F.3d at 113. Accordingly, to the extent that Plaintiff alleges a

hostile work environment claim, such a claim must be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is hereby granted, in part, and denied, in part. The Court denies Defendant's motion as to Plaintiff's retaliation claim based on the denial of a promotion. The Court dismisses with prejudice: (1) any claims based on his alleged demotion as untimely and (2) Plaintiff's Title VII race discrimination claim for failure to exhaust administrative remedies. The Court dismisses the remaining claims without prejudice, noting that a district court must normally afford a pro se plaintiff an opportunity to amend the complaint before dismissing it. *See Farrell v. Child Welfare Admin.*, 77 F. Supp. 2d 329, 333 (E.D.N.Y. 1999). Accordingly, the Court grants Plaintiff thirty days to amend his (1) race discrimination claims under §§ 1983 and 1981 and his religious discrimination claims under Title VII and § 1983 based on the denial of a promotion, and (2) his hostile work environment claim.


Dated: Brooklyn, New York
      September 23, 2016

                                              SO ORDERED:

                                                /s/ LDH
                                              LaSHANN DeARCY HALL
                                              United States District Judge
                                              Eastern District of New York